UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD GERBER, | : | 1:15-CV-01492 |
| | : | |
| Plaintiff | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| WARDEN DONNA ASURE, *et al.*, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Introduction.**

The plaintiff, Richard Gerber, a prisoner proceeding *pro* se, filed a complaint and an application to proceed *in forma pauperis*. Gerber's claims stem from his confinement at the Monroe County Correctional Facility. We granted Gerber's application for leave to proceed *in forma pauperis*, and after screening the complaint, we concluded that it fails to state a claim upon which relief may be granted against a number of the defendants. Although we granted Gerber leave to file an amended complaint, he has not done so. Instead, he filed a motion seeking leave to withdraw his complaint and to withdraw his application for leave to proceed *in forma pauperis*. We recommend that the Court grant Gerber's request to withdraw his complaint, but we recommend that the Court deny his request to withdraw his already decided application for leave to proceed *in forma pauperis*.

## II. Factual Background and Procedural History.

Gerber is currently incarcerated at the State Correctional Institution at Waymart. His claims in this case, however, concern events that happened at the Monroe County Correctional Facility (MCCF). Gerber names the following 12 individuals and entities as defendants: (1) Warden Donna Asure; (2) Deputy Warden William Carver; (3) Deputy Warden Gary Haidle; (4) Director of Treatment Jo Martin; (5) Lieutenant Joynes; (6) Lieutenant McCoy; (7) Sergeant Vierra; (8) Sergeant Lando; (9) Sergeant Armond; (10) Sergeant Antoine; (11) Oasis Corporation, which, according to Gerber, has a contract with Monroe County to run the commissary program at the MCCF; and (12) Trinity Corporation, which, according to Gerber, has a contract with Monroe County to run the dietary program at the MCCF.

Gerber titles his complaint as a class action complaint, and he alleges numerous facts relating to general conditions at the MCCF without specifically alleging how he himself was affected by those conditions. Because as a *pro se* prisoner, Gerber cannot be a class representative for other prisoners, we will not summarize or otherwise address the class allegations. Rather, we focus on Gerber's

allegations regarding events involving him and conditions to which he specifically alleges he was subject.

Gerber alleges the following facts pertaining to the MCCF, where, he alleges, he was confined as a pretrial detainee. Upon Gerber's arrival at the MCCF in June of 2015, Deputy Warden Carver placed him in administrative segregation without any official documentation explaining the placement and even though Gerber had not incurred any misconduct charges. Immediately, Gerber challenged his placement in segregation claiming there was no legitimate penological reason for such placement. He did so by various means including submitting multiple requests to Deputy Warden Carver, all to no avail. In early July, an officer told Gerber that Carver said that Gerber would be going to population the next day, but that did not happen. Later, the officer wrote a report "unveiling the unprofessional conduct of [the] Deputy and nothing further took place." *Doc. 1* at ¶32.

Also, in early July, an incident occurred involving Gerber, who was on a phone call paid for by his family, when Officer Kovac instructed him to terminate the call and secure himself in his cell because another inmate was being transported to the block. Instead of complying with the officer's instructions, Gerber questioned where the policy that he must return to his cell when another inmate is

3

brought onto the block was set forth. Officer Kovac summoned his supervisor, defendant Lando, and defendant Lando and defendant Joynes arrived on the block. Gerber continued to question where the prison policy was that provided that he had to return to his cell. According to Gerber, although his actions were not combative and did not warrant the use of force, Lando ordered the surrounding officers to take him down. The officers applied restraints to Gerber, and according to Gerber, he was "regurgitating all over the floor while simultaneously enduring breathing complexities." *Id.* at ¶32. Lifting Gerber to his feet, the officers realized that they had not correctly applied the handcuffs as Gerber's hands became unsecured. Although, according to Gerber, he was not resisting, the officers brutally slammed him back onto the floor until his hands were properly secured. He was then transferred to disciplinary segregation even though he had not been found guilty of misconduct. After being secured in a cell in the Restricted Housing Unit, Gerber remaining handcuffed despite the fact that the cuffs were cutting off his circulation.

Gerber later received a hearing with respect to the misconduct report that he received as a result of this incident, and he was found guilty of disobeying an order, disrespect, and creating a minor disturbance. Gerber requested that Warden Asure

4

preserve the surveillance tape of the incident and the photos taken of his injuries, and he stated his intent to pursue civil litigation.

According to Gerber, he met another inmate who had been sexually assaulted, and concluding that the MCCF was violating the Prison Rape Elimination Act (PREA), he attempted to intervene on that prisoner's behalf by contacting the PREA hotline.  About a week later, defendant McCoy came to Gerber's cell and told him to pack up because he was being transferred to the Lackawanna County Prison as per Warden Asure and Deputy Warden Carver.  Gerber, who alleges that he had no charges from Lackawanna County, asked why he was being transferred, and McCoy told him that it was because of everything that had transpired.  After Gerber responded that he did not want to be transferred and that the only thing that had transpired was that he was preparing a class action complaint and he had notified outside agencies about what he had been subject to and what he had witnessed, McCoy walked away and there was no more talk of a transfer.  But, according to Gerber, he was later retaliated against as Warden Asure, Deputy Warden Carver, and Lieutenant McCoy instructed the RHU Officer to suspend his recreation and three showers and to alter his meal so that he was served a meal designed for inmates who are on suicide prevention.

5

The complaint contains three claims stemming from the nonclass allegations: (1) a First Amendment retaliation claim; (2) an excessive force claim; and (3) a due process claim based on Gerber being confined to administrative segregation. Gerber is seeking injunctive relief as well as punitive damages against the defendants in both their individual and official capacities.

After screening the complaint, we concluded that as a *pro se* prisoner, Gerber may not proceed with this case as a class action, that since he is no longer incarcerated at the MCCF, his claim for injunctive relief is moot, and that because punitive damages are not available from a municipal entity, he may not recover punitive damages from the defendants in their official capacities.  We also concluded that the complaint failed to state a claim upon which relief may be granted against defendants Hiadle, Martin, Vierra, Armond, Antoine, Oasis Corporation, and Trinity Corporation because Gerber did not allege personal involvement on the part of those defendants.  We further concluded that the complaint failed to state a due process claim based on Gerber's confinement in administrative segregation because Gerber did not have a liberty interest protected by the Due Process Clause. We granted Gerber leave to file an amended complaint, and we noted that if he failed to do so, we would direct that the original complaint be served on defendants Asure,

Carver, Joynes, McCoy, and Lando, and we would recommend that the other defendants be dismissed from this action.

Gerber has not filed an amended complaint. Instead, he filed a motion seeking leave to withdraw his complaint and to withdraw his application for leave to proceed *in forma pauperis.*

## III. Discussion.

Gerber states in his motion to withdraw that he does not currently have adequate funds to pursue this case, that since he is no longer incarcerated at the MCCF he lacks the aspiration to pursue the case, and that he does not intend to refile in the immediate future. We recommend that Gerber's motion to withdraw be granted in part and denied in part. Since Gerber has not filed an amended complaint and has stated his intent not to pursue this case, we recommend that the motion to withdraw the complaint be granted.

But we recommend that the motion to withdraw Gerber's *in forma pauperis* application be denied. The Court has already granted Gerber's application for leave to proceed *in forma pauperis*. Moreover, Gerber is required to pay the filing fee. *See* 28 U.S.C. § 1915(b)(1)("[I]f a prisoner brings a civil action or files an

appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee."). "28 U.S.C. § 1915 makes clear that filing fees shall be assessed, and makes no provision for a refund of such fees." *Williams v. U.S. Dist. Court for Dist. of Newark, N.J.*, 455 F. App'x 142, 144 (3d Cir. 2011); *Cf. Porter v. Dep't of the Treasury,* 564 F.3d 176, 179 (3d Cir.2009) (noting that filing fees cover some of the costs associated with opening a case and also serve to deter frivolous filings and concluding that appellants are not entitled to the return of their filing and docketing fees upon dismissal of their appeals). Further, in his application for leave to proceed *in forma pauperis* and in the authorization form that he filed, Gerber acknowledged that he was required to pay the filing fee. *Doc. 8* (application)("I am willing to pursue my claims in this action under the new provisions of The Prison Litigation Reform Act, understanding that pursuing my claim requires payment of a partial filing fee and deduction of sums from my prison account when funds exist until the filing fee of $350.00 has been paid in full."); *Doc. 7* (authorization form)("I also understand that the entire filing fee will be deducted from my account regardless of the outcome of my civil action.").

Because there is no basis to allow Gerber to avoid the filing fee, we recommend that his motion to withdraw his already decided application for leave to proceed *in forma pauperis* be denied.

**IV. Recommendations.**

Accordingly, for the foregoing reasons, it is recommended that Gerber's motion (doc. 11) to withdraw be granted to the extent that he seeks to withdraw the complaint, but that it be denied to the extent that he requests to withdraw his application for leave to proceed *in forma pauperis*.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record

developed before the magistrate judge, making his or her own determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of October, 2015.

                                                  ***S/Susan E. Schwab***
                                                  Susan E. Schwab
                                                  United States Magistrate Judge